AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| | |
|---|---|
| United States of America<br>v.<br>Emilio Morales<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 25-4257 MJ<br>)<br>)<br>) |

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

OCT 07 2025

MITCHELL R. ELFERS
CLERK OF COURT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) <u>August 26, 2025,</u> in Otero County, in the District of New Mexico, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1151, 1152, 1153, NMSA § 30-6-1 | Crimes Occurring Within Indian Country (Child Abuse) |

This criminal complaint is based on these facts:
See attached "Affidavit"

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Erin Quintana, Special Agent
*Printed name and title*

Attested to by the complainant in accordance with the requirements of Fed. R. Crim. P. 4.1
by
submitted electronically and sworn  *(specify reliable electronic means).*

Date: October 7, 2025

_____
*Judge's signature*

Jerry H. Ritter  U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE ARREST OF:<br>Emilio Morales | Case No. |

**AFFIDAVIT IN SUPPORT OF**

**AN APPLICATION FOR AN ARREST WARRANT**

I, Erin Quintana, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1.  I have been employed with the FBI as a Special Agent since January 2025. I am classified, trained, and employed as a federal law enforcement officer with statutory arrest authority charged with conducting criminal investigations of alleged violations of federal criminal statutes, including Title 18 of the United States Code. I am currently assigned to the Albuquerque Division, Las Cruces Resident Agency. Prior to my current position as a Special Agent, I worked for the FBI as an Investigative Specialist in the Phoenix Division beginning in January 2022.

2.  During my tenure with the FBI, I have received formal and informal training in conducting a variety of criminal investigations. I have executed or participated in the execution of search and arrest warrants. My investigative training and experience include, but is not limited to, conducting surveillance, interviewing subjects, witnesses, and victims, managing cooperating sources, issuing subpoenas, and analyzing records.

3.  As a Special Agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer, I am authorized to execute warrants issued under the authority of the United States. Moreover, I make this affidavit in support of a criminal complaint alleging that on or about August 26, 2025, in Otero Country, in the District of New Mexico, within

Indian Country, on the Mescalero Apache Reservation, (age 24) Emilio Morales (hereafter "Morales"), did recklessly endanger and abuse two juvenile victims, John Doe (age 2) and Jane Doe (age 4), his children, and enrolled tribal members, by placing them in an unsafe situation with a weapon and causing them mental and psychological harm as a result of his actions.

### Relevant Statutes

4. Title 18 U.S.C. § 1151 states, "[e]xcepts as otherwise provided in sections 1154 and 1156 of this title, the term "Indian Country," as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same."

5. Title 18, U.S.C. § 1152 states, "[e]xcept as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country. This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively."

6. Title 18, U.S.C. § 1153 (a) states "[a]ny Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder,

manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, a felony assault under section 113, an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States." Section (b) states, "Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense."

7. NMSA 30-6-1 D states, in relevant part, "Abuse of a child consists of person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be:

(1) placed in a situation that may endanger the child's life or health."

8. NMSA 32A-4-2 states, in relevant part, "B. "abused child" means child: (1) who has suffered or who is at risk of suffering serious harm because of the action or inaction of the child's parent, guardian or custodian; (2) who has suffered physical abuse, emotional abuse or psychological abuse inflicted or caused by the child's parent, guardian or custodian."

## PROBABLE CAUSE

9. On or about August 26, 2025, the Bureau of Indian Affairs ("BIA") was notified of a disturbance that was taking place at a residence located within the exterior boundaries of the Mescalero Apache Indian Reservation.

10. At around 2:00am that night, Witness #1 was outside her residence when Emilio Morales arrived on his motorcycle. Morales let his motorcycle fall on its side, unzipped his jacket, and pulled out a firearm.

11. Morales began shooting the firearm into the air.

12. Witness #1 told Morales that she was going to call the police. Morales responded, "if you call the police, somebody's going to die tonight." Morales repeated this statement several times.

13. Witness #1 denied Morales' entry into her house. Morales punched the front window with his fist until it broke.

14. Morales kept repeating aloud; "somebody's going to die tonight" and "I am going to shoot myself in front of my kids."

15. In a recorded 911 call, Witness #1 was heard asking BIA to send over help urgently. Morales was heard stating, "I am going to fucking die tonight. You fucking kicked me out. I haven't fucking eaten today because of you. I am going to die tonight." While Morales was speaking, gun shots were being fired in the background.

16. Witness #1 can be heard screaming "lock the door!"

17. Morales forced himself into the house. He can be heard in the 911 call stating, "where the fuck are my kids, fuck you."

18. Morales made his way into his children's bedroom with a firearm in his hand. He took John Doe (2 years old) from his crib and stated, "I am going to kill myself and my son is going to see it."

19. Witness #1 can be heard screaming, "he is grabbing my grandson." Other unidentified voices are heard saying "give me the baby."

20. While Witness #1 was on the phone with dispatch, Morales punched her in the face. He took the phone from her hand and tried to break it.

21. Witness #1 tried to take John Doe away from Morales. Morales reacted by turning away and falling on the front porch of the house with John Doe underneath him.

22. Morales then jumped up still holding John Doe with one hand and the firearm in the other. He ran to the back of the house towards a Jeep. Morales kept yelling "I am going to kill myself."

23. Witness #1 was still on the phone with dispatch telling them Morales was trying to take John Doe in the Jeep and still possessed a firearm.

24. Morales surrendered John Doe. He then proceeded back into the house where he grabbed Jane Doe (age 4).

25. Morales kept repeating that he was going to kill himself in front of Jane Doe.

26. Morales threatened to jump out the window with Jane Doe if the police came into the house.

27. Witness #2 was able to grab the gun from Morales and give it to Witness #1.

28. Witness #1 disabled the gun and hid it somewhere Morales couldn't find it.

29. When BIA arrived on scene, their weapons were drawn. BIA announced themselves as they made entry. Morales was heard stating, "and look at who's here."

30. Following Morales' statement, the sound of shattering glass can be heard at the back of the house, near the bedroom.

31. Morales came to the front of the bedroom doorway and held Jane Doe in his arms. Morales' hands were covered in blood.

32. While holding Jane Doe, Morales told BIA to shoot him in the head.

33. Morales backtracked into the bedroom while holding Jane Doe. He continued to scream to police that he wanted to die.

34. Jane Doe was visibly terrified by Morales' behavior and was crying. Jane Doe extended her arms to BIA to separate herself from Morales. Jane Doe was taken away from Morales.

35. Morales admitted to BIA that he shot the firearm and had consumed alcohol.

36. I reviewed the Tribal Census Records indicating John Doe and Jane Doe are enrolled members of the Mescalero Apache Tribe, a federal recognized tribe. Morales is the parent of John Doe and Jane Doe.

## CONCLUSION

37. I therefore submit that probable cause exists to believe that Morales violated Title 18 U.S.C. Sections 1151, 1152, 1153, and NMSA 30-6-1, which makes it a crime for any parent, guardian, or custodian to place children at risk of suffering serious harm; to knowingly, intentionally, or negligently place children in a situation that may endanger their life or health; and/or to inflict or cause emotional or psychological abuse of children – within federal territory.

38. Supervisory Assistant United States Attorney Randy Castellano approved prosecution in this case.

Respectfully submitted,

Erin Quintana
Special Agent
Federal Bureau of Investigation

submitted electronically and sworn telephonically to before me on October 7, 2025, 2025.

U.S. Magistrate Judge